

# In the Missouri Court of Appeals
## Western District

IN THE ESTATE OF BESSIE MARIE ) 
RICH, Deceased; M. WARREN RICH, )     WD82884
                 Appellant, )
v. )
                            )     **FILED:  May 26, 2020**
JERI LEIGH HIBLER CASKEY, )
               Respondent. )

## APPEAL FROM THE CIRCUIT COURT OF BATES COUNTY
### THE HONORABLE JULIE A. HIGHLEY-KEUTZER, JUDGE

### BEFORE DIVISION ONE:  LISA WHITE HARDWICK, PRESIDING JUDGE,
### CYNTHIA L. MARTIN AND THOMAS N. CHAPMAN, JUDGES

M. Warren Rich ("Rich"), personal representative of the Estate of Bessie Marie

Rich, appeals the circuit court's docket entry finding that expenses and attorney fees

incurred by Jeri Leigh Caskey ("Caskey") d/b/a Caskey Law Office were reasonable and

directing Caskey to submit a claim for reimbursement of those expenses and attorney

fees for the court's approval.  Rich contends Caskey lacked standing to assert a claim

against the estate.  Because the court's docket entry was not an appealable

interlocutory order under the probate code, the appeal is dismissed for lack of

jurisdiction.

### FACTUAL AND PROCEDURAL HISTORY

Rich's wife, Bessie, died on April 6, 2015.  On May 18, 2015, Rich filed an

application for letters of administration in the probate division of the Bates County

Circuit Court requesting that he be appointed personal representative of Bessie's estate. The next day, the court granted the letters of administration, appointed Rich as personal representative of Bessie's estate, and issued the notice of letters of administration granted. On May 21, 2015, Rich filed an inventory and appraisement of the estate's property.

The application for letters of administration and inventory and appraisement were prepared by Caskey. Caskey was a sole practitioner, and her firm was Caskey Law Office. Caskey occasionally worked of counsel, on a case-by-case basis, for The Caskey Law Firm, which was a solo practice belonging to her brother-in-law, Harold Caskey ("Harold"). Harold's firm asked Caskey to do the legal work on Rich's estate case. After Caskey prepared the application for letters and of administration and the inventory and appraisement, she emailed them to secretaries at Harold's firm, who then had Rich sign them. Caskey, on behalf of Harold's firm, electronically signed the application for letters as Rich's attorney. Harold's firm electronically filed the documents and paid the filing fee and the fee for publication of the notice of letters of administration granted.

Over a year later, Rich contacted Caskey and asked her to withdraw as counsel for the personal representative because he planned to obtain other counsel. On June 30, 2016, Caskey filed a motion to withdraw and a petition for reimbursement of expenses and for attorney fees. In her petition, she asked that her firm, Caskey Law Office, be reimbursed $397.10 in expenses for the filing and publication fees and that she be paid $500 in attorney fees. Caskey sent a copy of her motion to withdraw and her petition for reimbursement to Rich, along with a letter advising him to have his new counsel enter his appearance right away. On July 12, 2016, Rich's new counsel, Todd

2

Wilhelmus, entered his appearance on behalf of Rich. That same day, the court granted Caskey's motion to withdraw and entered an order allowing Caskey Law Office $397.10 as reimbursement of expenses and Caskey $500 in attorney fees.

On January 18, 2017, Rich filed a motion for summary judgment on Caskey's petition for reimbursement of expenses and attorney fees. In his memo in support of the motion, Rich asserted that Caskey Law Office lacked standing to file the petition because the expenses were incurred, and the attorney fees were generated, by Harold's firm and not by Caskey's firm. The court ruled that Rich's motion was moot because the court had already entered an order on July 12, 2016, granting Caskey's petition.

Rich filed a motion to set aside the July 12, 2016 order. In his motion, he argued that his motion was not moot because the order was interlocutory and was entered without notice and an opportunity to be heard, in violation of his due process rights. In response, Caskey filed her consent to setting aside the order on the basis that the order was granted without notice. The court subsequently entered a consent judgment setting aside the July 12, 2016 order.

On June 6, 2019, the court held a hearing on Caskey's petition for reimbursement of expenses and attorney fees, during which Caskey and Rich testified. Caskey testified that she worked of counsel for Harold's firm because Harold had Parkinson's disease, which made it difficult for him to work full time. Caskey testified that she took this case at the request of Harold's firm and that she was seeking reimbursement of the filing and publication fees paid by the firm on the estate's behalf. She testified that she made the request for reimbursement in her firm's name and not Harold's firm's name because Harold died in October 2015, and "[w]hen he died, the

3

firm died." She further testified that the amount of attorney fees she was requesting was $500, which was the minimum she would charge and an amount that she believed to be appropriate for the work she had done on behalf of the estate.

Caskey testified that she sought reimbursement and payment of attorney fees in a petition, rather than in a claim against the estate, because "the attorney for the estate typically does it by petition." On cross-examination, Caskey acknowledged that her petition did not include a statement that it was made under oath, as required by Section 472.080, RSMo 2016,[1] for all documents filed under the probate code. After her testimony, Caskey offered to refile her petition to include the statement that it was made under oath.

Rich testified that, when Bessie died, he sought representation to assist him in administering her estate. He testified that he went to the place that used to be the law firm of Caskey, Hopkins and Wilhelmus. Rich testified that he was unaware that the Caskey, Hopkins and Wilhelmus firm had dissolved and that only Harold's firm was at that location. According to Rich, he asked Kay Caskey if Bill Hopkins, who had represented Rich and Bessie in a personal injury matter, was there. After Kay told him Hopkins was not there, he "asked about representation on the estate of Bessie Rich." Kay told Rich that she needed to get information from him about Bessie's relatives, so Rich and Kay sat down and filled out paperwork. Rich never met with or spoke on the telephone with either Harold or Caskey.

According to Rich, no one explained to him that he was hiring Harold to represent him, he never intended to hire Harold or Caskey, and he did not sign a contract for either (or both) of them to represent him. Rich testified that he intended to hire Hopkins.

---

[1] All statutory references are to the Revised Statutes of Missouri 2016.

Rich admitted that he returned twice to Harold's firm, first to sign the application for letters of administration and a second time to sign the inventory. Nevertheless, Rich testified that he was unaware that Hopkins was not representing him in the estate case until a year later, when he talked to Hopkins. At that point, he asked Caskey to withdraw. Rich testified that he had no issue or problem with the quality of Caskey's work; he just thought Hopkins was representing him.

After Caskey's and Rich's testimony, the court stated that it was "well aware of" the state of Harold's health at the end of his life and was "very well aware" that Caskey and some other attorneys, including the court, "had stepped in at times to assist and be of counsel and help clients of the Caskey Law Firm." The court would not "speak to" "[w]hether there was some misrepresentation to Mr. Rich or not," but found that there was "certainly some confusion." The court stated that it did not hear any evidence "that Ms. Caskey had any intent or was trying to deceive [Rich] in any way." The court found that, as Rich acknowledged, Caskey's work was "very satisfactory" and was "just what would have been done had Mr. Hopkins done the same work." The court also found, "Clearly, the Caskey Law Firm was out the publication fee and was out the filing fee, and that would have happened whether it was Bill Hopkins working on the case through them or Bill Hopkins as a private attorney." The court further found that there was "good work that was done on the estate by an attorney. And that would have been money you would have paid to Mr. Hopkins or Ms. Caskey, whoever it was that you contracted with. There's just a question of who you contracted with."

The court explained:

> So – So given that I would allow a claim against the estate for the attorney's fees as well as reimbursement for the fees that the Caskey Law Firm was out, and if we want to re-characterize that as a claim against the

5

estate, I would allow it in that capacity. I do think that having it as a petition, given some confusion about whether Mr. Rich understood that you were doing legal work on behalf of himself as a personal representative, I do think that's a fair issue. But I don't think there's any issue as to the work that was done and the expenses that were – that were created on behalf of the estate.

So – So I would grant the claim but ask that it be re-characterized as – instead of a petition, that it be re-characterized as a claim against the estate.

Rich's counsel then stated:

Judge, I'm sorry, I was hoping [for] an oral argument on the issue. So if you would just permit me to say that the relationship between an attorney and a client is one of principal-agent contract and there has to be a meeting of the minds, and there obviously wasn't. He never intended to hire Harold. He didn't know he was hiring Harold. He never intended to hire Jeri Leigh Caskey. He never did hire her. Regardless of what they did, there was no principal-agent contract between Mr. Rich and Harold Caskey or Jeri Leigh Caskey to form an attorney-client relationship.

In response, the court stated, "I appreciate that, and because of that, I am not granting the petition, but I'm indicating that I will grant the claim."

After the hearing, the court made the following docket entry:

PR by atty Todd Wilhelmus; Claimant Jerri [sic] Leigh Caskey appears; Court hears evidence and approves request previously made in Claimant's Petition for Reimbursement and for Attorney Fees. Court finds that Petitioner's objection regarding the claim to be in the form of a Petition is valid but also determines that the expenses and fees sought are/were reasonable. The Court requests Claimant to submit her claim for reimbursement for expenses incurred by the Caskey Law Firm and her fees for approval by the Court. JAH 6/06/19.

Rich filed this appeal.

6

Before reaching the merits of an appeal, we must determine whether we have jurisdiction. *In re Kraus*, 318 S.W.3d 274, 276 (Mo. App. 2010). "The right to appeal from a judgment of the probate division is purely statutory." *Id.* "While probate orders are generally interlocutory and not subject to appeal until final disposition, the orders enumerated in § 472.160.1 are subject to immediate appeal." *Id.*

In the jurisdictional statement of his brief, Rich states that the court's June 6, 2019 docket entry constituted an immediately appealable interlocutory order under Section 472.160.1(1), which provides:

> 1. Any interested person aggrieved thereby may appeal to the appropriate appellate court from the order, judgment or decree of the probate division of the circuit court in any of the following cases:

> (1) On the allowance of any claim against an estate exceeding one hundred dollars[.]

Rich asserts that, in the docket entry, the court entered a "judgment in favor of [Caskey] allowing the claim in an amount greater than $100.00." We disagree.

While the court stated in its docket entry that it was approving Caskey's request in her petition for reimbursement of expenses and attorney fees and that the requested amounts were reasonable, the court also stated that Rich's objection to the form of her request – a petition instead of a claim – was valid. The court, therefore, directed Caskey "to *submit her claim* for reimbursement for expenses incurred by the Caskey Law Firm and her fees *for approval by the Court*." (Emphasis added.) That the court was not granting Caskey's request for reimbursement of expenses and attorney fees at that time is supported by the court's statements at the end of trial, made in response to Rich's counsel's contention that Rich did not have attorney-client relationship with either

7

Harold or Caskey: "I appreciate that, and because of that, *I am not granting the petition, but I'm indicating that I will grant the claim*." (Emphasis added.)

The court's docket entry advised the parties that Caskey's request was reasonable and that it would grant the request if she submitted it in the form of a claim for the court's approval, which has not been done. The court did not grant her claim in the docket entry and, furthermore, did not include the amount of any such claim in the docket entry. The docket entry was not an order allowing a claim in excess of $100.00 against Bessie's estate. Because the June 6, 2019 docket entry was not an immediately appealable interlocutory order under Section 472.160.1(1), we have no jurisdiction to hear Rich's appeal.

## CONCLUSION

Appeal dismissed.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

8